*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

FILED

JUN 19 2009

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | Case No. 02-93549-D-11L |
| DAVID ROBINETTE and MARGIE ROBINETTE, | Docket Control No. JTCN-3 |
| Debtors. | Date: May 27, 2009<br>Time: 10:30 a.m.<br>Dept: D |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

## MEMORANDUM DECISION

On April 24, 2009, the law firm of Neumiller & Beardslee, as counsel for the Official Committee of Unsecured Creditors in this case, filed its first interim application for attorney's fees and costs, seeking approval of $21,659.00 in fees and $492.41 in costs ($22,151.41 in total) ("the Application"). For the reasons set forth below, the Application will be granted in part.

### I. Introduction

David and Margie Robinette ("the debtors") filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code ("Code") on September 23, 2002.[1] Their chapter 11 plan ("the plan"), confirmed by order dated September 17, 2003, provided that the Class 3 general unsecured creditors were to be paid in full on or before January 31, 2005. The debtors

---

1. Unless otherwise indicated, all Code, chapter, section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

failed to comply with this aspect of the plan. On November 21, 2008, coincidentally as the four-year anniversary of January 31, 2005 was approaching, the debtors filed a motion to approve the sale of their remaining parcel of real property. The motion stated that the net sale proceeds would be paid to creditors according to the provisions of the plan.

In response to the motion, attorney James Nuss raised the concern that the debtors might assert the four-year statute of limitations as a bar to enforcement of the Class 3 claims, to the extent those claims were not paid by January 31, 2009.[2][3] As a result, the Committee sought to employ Neumiller & Beardslee ("Counsel") as its counsel, and the court approved the firm's employment on January 7, 2009.

The Committee, through Counsel, then filed a motion to interpret or correct certain provisions of the plan. The motion was granted, and on February 2, 2009, the court issued an order that, among other things, the plan requirements for payments to general unsecured creditors are continuing, and that "a failure of payment or default thereunder shall not commence the running

---

2. Mr. Nuss had been a partner in the law firm that had represented the Official Committee of Unsecured Creditors ("Committee") earlier in the case. That firm has since been dissolved, and Mr. Nuss is of counsel with the firm of Neumiller & Beardslee, the applicant herein.

3. California Code of Civil Procedure § 337 provides that the statute of limitations for an action on a written contract is four years. The four-year period does not begin to run until the cause of action accrues, which in turn, occurs when the obligation is breached, in this case, January 31, 2005. Romano v. Rockwell Internat., 14 Cal.4th 479, 488 (1996); Niles v. Louis H. Rapoport & Sons, Inc. (1942) 53 Cal.App.2d 644, 651).

of a statute of limitations or otherwise result in relieving or providing the reorganized debtors a defense from making the payments thereunder."[4]

This is Counsel's first fee application. Both unsecured creditor Stanislaus Farm Supply and the debtors have filed limited opposition to the Application. In addition, the court has an independent duty to review all requests for compensation and to determine their reasonableness pursuant to § 328.

## II. Whether Counsel's Services Were Necessary

Stanislaus Farm Supply and the debtors first object to the Application on the ground that the services provided by Counsel were unnecessary. In particular, they challenge the necessity of the Committee's motion to interpret or correct the plan.

Assuming, without conceding, that the services were unnecessary in hindsight, that is not the yardstick. Instead, the court must determine whether, at the time, it was reasonable for Counsel to provide the services in question. The plan, drafted and submitted by the debtors, did not address the consequences of the debtors' failure to timely pay the Class 3 creditors, except to say that upon breach, creditors would be free to pursue their claims in state court. However, the plan also provided that all assets and property of the debtors would remain in the estate, and would continue to be protected by the automatic stay until property was sold to a third person.

The latter provision casts doubt on the effectiveness of the former, in that although creditors might be free to pursue their

---

4. Order Correcting and Reconciling Inconsistencies in the Confirmed Plan of Reorganization, filed February 2, 2009.

claims after January 31, 2005, their ability to collect would remain in doubt so long as the debtors' assets remained in the estate. The plan said nothing about the effect of the statute of limitations on the creditors' ability to pursue their claims.

This omission created an ambiguity within the plan. Where a chapter 11 plan is ambiguous, the resulting uncertainty will often make assistance of counsel reasonable. The court finds the chapter 11 plan here was sufficiently ambiguous to make Counsel's services reasonable at the time they were performed.

Equally important, on December 24, 2009, Counsel sought written assurance from the debtors' attorney that California Code of Civil Procedure § 337 would not be used as a bar to the payment of unsecured creditors.[5] The debtors' attorney failed to provide such assurance, thus necessitating further action by the Committee's counsel. Viewed in this light, Counsel's additional services were reasonable and prudent at the time they were undertaken.

The court notes that Stanislaus Farm Supply had apparently already filed a lawsuit and obtained a judgment against the debtors. Thus, it would not be concerned with the running of the statute of limitations. For their part, the debtors implied, in their response to the Committee's opposition to the proposed sale, that they might very well rely on the statute of limitations as a defense to payment. See debtors' response to

---

5. Specifically, counsel asked the debtors' counsel to include in a pending motion for sale of property an acknowledgment of the debtors' debts to the unsecured creditors, a waiver of the statute of limitations, and an agreement to pay the unsecured creditors from the sale proceeds. See declaration of James T.C. Nuss, filed January 14, 2009, DN 916.

Committee's opposition, filed January 16, 2009, DN 925, p. 3. The limited opposition of both Stanislaus Farm Supply and the debtors is somewhat ironic when viewed in this light.

### III. Reasonableness of Counsel's Fees

Stanislaus Farm Supply and the debtors also object to the reasonableness of the fees requested in the Application. Section 330 sets out the standards by which courts should determine the reasonableness of fees under § 329. Reasonableness is determined by considering the nature, extent, and value of the services rendered (see In re Eliapo, 298 B.R. 392, 401 (9th Cir. BAP 2003)), taking account of all relevant factors, including the time spent on the services, the rates charged for the services, and the customary compensation of comparably skilled attorneys in other cases. § 330(a)(3).

Applying these standards, the court finds that Counsel's hourly rate is reasonable, the services rendered are of good quality, and the services were skillfully performed. With that said, the court does have some concern with certain aspects of the Application, including the following: (1) in some instances the Application lumps time entries, and (2) some of the time charged is excessive.

### A. Lumping Multiple Time Entries

There are several instances of lumping together multiple time entries in the Application. By way of illustration, on January 14, 2009, Counsel charged 5.3 hours for e-mails to three individuals, a note to file, telephone conferences with three individuals, preparation of a declaration, exhibits, and related documents, and an e-mail to a fourth individual. Where "lumping"

occurs, as here, the court cannot properly assess whether the time spent on each task was reasonable.

The practice of lumping appears elsewhere in the Application:

    1.   On January 8, 2009, 1.4 hours;

    2.   On January 9, 2009, 3.0 hours;

    3.   On January 16, 2009, 1.0 hour;

    4.   On February 5, 2009, 2.6 hours.

The court cannot determine the reasonableness of the above listed services, rendering them non-compensable. Accordingly, the court will reduce the fee request by $3,990.00.[6]

**B. <u>Excessive Time Entries</u>**

Additionally, there are instances where the amount of time charged for a specific task appears excessive:

    1.   On January 11 and 12, 2009, JTCN billed more than 9 hours (9.4 hours) to prepare opposition to an amended motion to sell real property, to prepare a request for judicial notice, exhibits, and a declaration, to conduct legal research, to finalize objections to the sale motion, and to prepare an e-mail to committee members. After a review of these items, the court finds charging over 9 hours for this work is excessive. Therefore, the court will reduce these charges to 5 hours.

    2.   On January 20, 2009, JTCN billed 2.1 hours for preparation for an opposition to an amended motion to sell real property and 2.1 hours for preparation for a hearing on the

---

[6]. The court will re-visit the issue of these fees in a final fee application should Counsel set forth, with specificity, the amount of time spent on each task.

motion to interpret or correct the plan. After a review of these items, the court finds charging over 4 hours for this work is excessive. Consequently, the court will reduce these charges to a total of 2 hours.

Consistent with the above, the court will reduce the fee request by an additional $1,980.00.

Finally, on January 7, 2009, JTCN billed 0.2 hours to "download court order for approval of employment." This is a non-compensable secretarial task and thus must be subtracted from the fee request.

In light of the above deductions, Counsel's request for fees of $21,659.00 will be reduced by $6,030.00 ($3,990 + $1,980 + $60), and the court will allow fees of $15,629 and costs of $492.41, for a total of $16,121.41.

A separate order will be entered consistent with this memorandum decision.


Dated: June /9, 2009                 /s/ Robert Bardwil
                                     ROBERT S. BARDWIL
                                     United States Bankruptcy Judge

**CERTIFICATE OF MAILING**

I, Andrea Lovgren, in the performance of my duties as assistant to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document to each of the parties listed below:

Office of the US Trustee
501 "I" Street, Suite 7-500
Sacramento, CA 95814

Malcolm Gross
1040 S Mt. Vernon Ave., #G-316
Colton, CA 92324-4228

James Nuss
Neumiller & Beardslee
P.O. Box 20
Stockton, CA 95201-3020

Frederick Smith
Curtis & Arata
P.O. Box 11690
Oakdale, CA 95361


DATE: June 19, 2009

_____
Andrea Lovgren